**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM ESTELLE,**

      **Plaintiff,**

v.                                                 Case No: 6:13-cv-1490-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

The Plaintiff William Estelle (the "Claimant") brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for disability benefits. Doc. No. 1. On July 13, 2010, Claimant filed applications for a closed period of disability, disability insurance benefits, and supplemental security income, alleging an onset of disability date of May 30, 2010. R. 30, 159-166. Claimant is insured for disability insurance benefits through December 31, 2012. R. 32. Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to apply the correct legal standards to medical opinion of Dr. Nancy MacKay, Psy.D (R. 377-82). Doc. No. 13 at 12-15.[1]  For the reasons set forth below, the final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

---

[1] Claimant also argues that the ALJ erred by: failing to state the weight given to the opinion of Dr. Daviglus (Doc. No. 13 at 16); giving significant weight to the opinion of a non-examining physician (Doc. No. 13 at 16); giving great weight to the opinion of a consultative examining physician (Doc. No. 13 at 16-18); and making a negative credibility determination unsupported by substantial evidence (Doc. No. 13 at 13-24). In addition, Claimant argues that the Appeals Council erred by failing to review the ALJ's decision based upon new and material evidence. Doc. No. 13 at 24-25.

**I.     ANALYSIS.**

This case presents the commonly reoccurring circumstance where an ALJ's failure to state with particularity the weight given to all of the medical opinions of record, and the reasons therefor, frustrates the Court's ability to conduct substantial evidence review.  Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's sequential evaluation process for determining disability.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments; and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).  *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error).

On September 19, 2011, Dr. MacKay provided a consultative examining opinion as to Claimant's current level of psychological functioning based upon a referral from the Office of Vocational Rehabilitation.  R. 377.  Dr. MacKay's report and opinion is the only evidence in the record related to Claimant's mental impairments.  R. 1-419.  Dr. MacKay administered the

following evaluations: a mental status examination; the Wechsler Adult Intelligence Scale IV; the Woodcock Johnson – Tests of Achievement – III; the Woodcock Johnson Tests of Cognitive Abilities – III; the Minnesota Multiphasic Personality Inventory – 2; and the Adaptive Behavior Assessment System System II.  R. 377-82.   The objective testing revealed the following: the presence of a learning disability (R. 379); average intellectual functioning with the exception that Claimant's mathematical performance is at a fifth grade level (R. 379); anxiety and depression (R. 380); and adaptive functioning scores of questionable validity (R. 381).  Based upon the results of the above-stated mental status examination and objective testing, Dr. MacKay diagnosed Claimant with a mathematics disorder, a learning disorder, not otherwise specified, attention deficit disorder, not otherwise specified, depressive disorder, not otherwise specified with anxious features, pain disorder, personality disorder, not otherwise specified, and a current global assessment of functioning score of 52.  R. 381.

     Dr. MacKay provided the following opinion:

> [Claimant] is a 48-year-old gentleman who is has a GED education and work experience primarily in the construction field.  He identifies physical issues as his primary impediment to employment.  <u>The results of this evaluation are considered to be valid</u>.  Obtained level of intellectual functioning falls within the Low Average range.  Achievement and cognitive abilities are generally commensurate with expectations based on his obtained Full Scale IQ.  <u>An exception is the area of mathematics, in which [Claimant's] performance was significantly lower than expected.  A learning disability is indicated in this area.</u>  Although [Claimant] denies problems with concentration and attention, features of ADHD appear to be present. Personality test results indicate significant somatic complaints, along with depression and distrusting interpersonal relationships.  [Claimant] rates his adaptive functioning as quite low, and is concerned that his physical limitations make him unemployable.
>
> Test results indicate that [Claimant] is <u>likely to be able to remember locations and work like procedures without undue rehearsal.  He is able to read, understand, and remember short and simple instructions.  His ability to read, understand, and remember detailed</u>

<u>or complex instructions is likely to be adequate.  Any difficulty with carrying out instructions will be due to physical rather than cognitive limitations.  His ability to perform tasks that require mathematical calculations is moderately impaired.  [Claimant's] ability to concentrate and pay close attention to details for extended periods appears moderately impaired. ·He is likely to be able to sustain an ordinary routine with appropriate supervision</u>.

Evaluation results indicate that [Claimant] <u>has a degree of impulsivity that my [sic] sabotage his ability to easily make sound work-related decisions</u>.  Personality factors may complicate his ability to get along with co-workers and supervisors.  <u>He is likely to find it difficult to deal with constructive criticism.  He is likely to be somewhat uncomfortable working with others on the job, particularly with supervisors</u>.  This discomfort may come across to others as coolness, thus increasing their tendency to distance from his [sic].  [Claimant] is prone to interpret this distance as rejection, resulting in a cycle that can perpetuate strained interpersonal relations.  Superficial social skills appear fair.  He is able to ask questions and request clarification.  [Claimant] is transportation dependent which may lead to problems with punctuality or absenteeism.

Mr. Estelle's desire to obtain work is admirable, but undermined by his low estimate of his capabilities and his employability. He has primarily worked in construction, and a physical evaluation by a physician will determine how limited his ability is in these areas. He reports that he has worked as a tattoo artist. Perhaps this type of work, as an independent contractor, would be available to him at this point in time.  He is not suited to a career path that requires him to use math skills.  Mr. Estelle does not express a desire to return to an academic setting for retraining.  <u>Results indicate that he has symptoms of depression, anxiety, and ADHD.  He would benefit from an evaluation by a psychiatrist to determine if psychotropic medication would be an efficacious treatment for these symptoms</u>.

R. 381-82 (emphasis added).   Thus, Dr. MacKay opined that the results of her objective testing were valid and Claimant has symptoms of depression, anxiety, and attention deficit hyperactivity disorder.  R. 382.  With respect to the non-exertional limitations that result from these mental impairments, Dr. MacKay opined that Claimant: would benefit from a psychiatric evaluation to determine if medication would be helpful to treat these symptoms; has a learning disability in area of mathematics; is likely to be able to remember locations and work like procedures without undue

rehearsal; is able to understand and remember short and simple instructions; is moderately impaired in his ability concentrate and pay close attention to details for extended periods, but Claimant is capable of sustaining an ordinary routine with appropriate supervision; is impulsive, which may sabotage his ability to make sound work-related decisions; and will have difficulty working with others and accepting constructive criticism. R. 381-82.[2]

In the decision, the ALJ found at step-two of the sequential evaluation process that Claimant has the following severe impairments: degenerative disc disease and gout. R. 32. With respect to any severe mental health impairments, the ALJ stated the following at step-two:

> The Claimant has presented no evidence of any mental health treatment. However, he underwent a psychological examination in September of 2011 performed by Nancy MacKay, Psy.D. Based on the claimant's statements and the administration of some objective examinations, Dr. MacKay noted the claimant had a mathematics and learning disorder features of attention deficit hyperactivity disorder, major depressive disorder with anxious features, pain disorder with psychological factors, and features of a personality disorder. <u>While the diagnosis of a learning disorder and difficulty with math was derived from objective testing, the claimant was able to obtain a GED. The other psychological problems were diagnosed based on one interview with the claimant and dependent on his subjective statements</u>. Further, the claimant has never sought nor received any psychological treatment, even after this examination. Therefore, the claimant is not found to have any severe mental impairment.

R. 33 (emphasis added). The Court notes that the ALJ misstates the basis of for Dr. MacKay's opinions. Dr. MacKay's opinions are based upon the administration of five (5) objective tests and a single subjective mental status evaluation. *See supra* pp. 2-5. However, the ALJ characterizes Dr. MacKay's opinion as having been primarily based on an interview and Claimant's subjective statements. *Compare* R. 33 *with* R. 377-82. No record evidence supports that statement.

---

[2] As set forth above, Dr. MacKay's opinion is the only medical record or opinion related to mental health impairments or limitations therefrom in the record.

Nevertheless, so long as the ALJ determines that a claimant does have a single severe impairment and proceeds to the next step, the ALJ commits no error at step-two. *See Farrington v. Astrue*, Case No. 3:09-cv-94-J-TEM, 2010 WL 1252684, at *4 (M.D. Fla. Mar. 29, 2010) (citing authority and explaining that finding a single impairment at step-two is all that is required so long as the ALJ considers all impairments, both severe and non-severe, throughout the sequential evaluation process, including in determining Claimant's RFC). Thus, at step-two, the ALJ found that Claimant does not have a severe mental impairment.

Similarly, the ALJ's residual functional capacity assessment (the "RFC") does not include any non-exertional limitations resulting from any mental impairments. R. 34.[3] In reaching the above-stated RFC, the ALJ explains that the ALJ is required to consider limitations arising from "all of Claimant's impairments, including impairments that are not severe." R. 31. Despite recognizing that requirement, the ALJ states the following about Dr. MacKay's opinion at step-four:

> Dr. MacKay reported her opinion that the claimant would be limited in his ability to perform mathematical calculations, concentrate, get along with others, and deal with criticism. However, as the claimant has no record of any mental health treatment and Dr. MacKay's opinions were based on one instance of observations and discourse, the [ALJ] finds <u>evidence does not support finding he has any severe mental impairment</u>.

R. 36 (emphasis added). Thus, in determining the Claimant's RFC, while acknowledging that the ALJ is required to consider limitations from both severe and non-severe impairments (R. 31), the ALJ determined that the "evidence does not support finding he has any severe mental impairment." R. 31, 36.

---

[3] The ALJ's RFC provides: "[C]laimant has the residual functional capacity to sedentary work . . . except occasional stooping, reaching with his dominant right upper extremity, handling with his right upper extremity, and pushing/pulling with the upper extremities. The claimant must avoid workplace hazards and cannot drive an automobile or other heavy equipment. He requires the option to switch between sitting and standing at will." R. 34.

The ALJ's handling of the Dr. MacKay's opinion warrants reversal for three primary reasons.  First, the ALJ failed to state with particularity the weight given to Dr. MacKay's opinions.  R. 36.  The ALJ concluded that Dr. MacKay's opinion did not support a finding that Claimant has a severe impairment.  R. 36.  However, the ALJ never stated with particularity the actual weight afforded to Dr. MacKay's opinion that Claimant "is limited in his ability to perform mathematical calculations, concentrate, get along with others, and deal with criticism."  R. 36.  In the absence of such a statement, it is impossible for the Court to determine if the ALJ's decision is supported by substantial evidence.  *See Winschel*, 631 F.3d at 1178-79.  *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error).

Second, the ALJ's findings at step-four in determining the Claimant's RFC fail to follow the proper legal standards with respect to Dr. MacKay's opinion. In reaching an RFC determination, the regulations unequivocally require that the ALJ consider all limitations from the Claimant's impairments, including those limitations from impairments that the ALJ found non-severe at step-two. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2) (in determining RFC the ALJ "will consider all of your medically determinable impairments . . . <u>including your medically determinable impairments that are not 'severe.'</u>") (emphasis added).  This makes sense because a claimant's impairments, even if non-severe, may still impose limitations on a claimant's functional ability.  Here, despite recognizing the requirement that the ALJ consider limitations from impairments which are non-severe, the ALJ merely stated that Dr. MacKay's opinion "does not support finding [Claimant] has any severe mental impairment."  R. 36.  While that finding is sufficient at step-two, it is insufficient to demonstrate compliance with the regulations in determining the Claimant's RFC at step-four. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In this

case, the ALJ's failure to consider the presence of limitations from Claimant's non-severe impairments in determining the Claimant's RFC warrants reversal. *See Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (failure to follow proper legal procedures or to demonstrate the same warrants reversal); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).[4]

Third, Dr. MacKay's evaluation is the only medical opinion in the record regarding Claimant's mental impairments and resulting limitations. In *Jones v. Astrue*, 494 F. Supp. 2d 1284, 1289 (N.D. Ala. 2007) the ALJ rejected the opinion of the claimant's psychologist because it was inconsistent with the other evidence in the record. *Id*. The district court reversed, stating, in part, that the psychologist's report "is the only medical opinion contained in the record regarding the plaintiff's mental impairments," and "[a]n ALJ may not arbitrarily reject uncontroverted medical evidence." *Id*. (citing authority). The Court finds *Jones* persuasive and that a reversal for further proceedings in this case is warranted.[5]

---

[4] The Court notes that an ALJ's boilerplate statement that the ALJ has considered all functional limitations from all of a claimant's impairments, including impairments which are not severe, is usually sufficient to demonstrate compliance with the regulations. *See generally Urquhart v. Colvin*, No. 2:13-cv-724-FtM-CM, 2015 WL 263439, at *6 (M.D. Fla. Jan. 15, 2015) (sufficient for ALJ to state that ALJ "considered and determined all of Plaintiff's impairments – both severe and non-severe – in assessing [claimant's] RFC."). Here, the ALJ went beyond the boilerplate statement (R. 31) and specifically stated in determining the Claimant's RFC that Dr. MacKay's opinion only supported a finding that Claimant's mental impairments are not severe impairments. R. 36. Such a statement is clearly insufficient under the regulations in determining the Claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). Moreover the ALJ's statement persuades the Court that despite the ALJ's earlier boilerplate statement (R. 31), in this case, the ALJ did not consider whether Claimant has any functional limitations resulting from Claimant's non-severe mental impairments.

[5] While Claimant requests a reversal for an award of benefits, such relief is only appropriate where the Commissioner has already considered all the evidence and the clear, cumulative effect of that evidence establishes disability beyond any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). In addition, the Court may reverse for an awarded of benefits where the Claimant has suffered an injustice. *See Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982) (an award of benefits may also be appropriate if the claimant suffers an injustice). In this case, it is not clear, beyond any doubt, that Claimant is disabled and Claimant has not suffered an injustice. Due to the ALJ's errors with respect to Dr. MacKay's opinion, the case must be remanded for further proceedings. On remand, the ALJ will necessarily have to reconsider and weigh all of the evidence, formulate a new RFC and, if necessary, solicit new testimony from a VE. Accordingly, it is unnecessary to consider the Claimant's other allegations of error (*see supra* n.1). *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record).

## II.     CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of Section 405(g); and

2. The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner; and

3. The Clerk is directed to close the case.

**DONE AND ORDERED** in Orlando, Florida on March 10, 2015.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable W. Stephen Hubbard
Administrative Law Judge
c/o Office of Disability Adjudication and Review
McCoy Federal Bldg
100 W. Capitol St.
Jackson, MS 39269